## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**SIVAN KATZ,**

        **Plaintiff,**

  **v.**

**ZIGI SEGAL and**
**NILI ROTHSCHILD,**

        **Defendants,**

_____/

**CASE NO.:**

## COMPLAINT

Plaintiff, SIVAN KATZ ("Plaintiff" or "Ms. Katz"), by and through her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants, ZIGI SEGAL ("Defendant Segal" and/or "Landlord") and NILI ROTHSCHILD ("Defendant Rothschild") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This case involves a landlord who subjected his female tenant to relentless sexual harassment and, with the assistance of his wife, retaliated against the female tenant when she opposed her landlord's unlawful sexual advances.

2.     Ms. Katz brings this action pursuant to the Fair Housing Act ("FHA", 42 U.S.C. § 3604 *et seq.*) and the Florida Fair Housing Act ("Florida FHA", § 760.23, Fla. Stat. *et seq.*).

3.     Ms. Katz seeks monetary relief to redress the Defendants' unlawful housing practices in violation of the FHA and the Florida FHA. Additionally, this action seeks to redress Defendants' deprivation of Ms. Katz' personal dignity and her civil right to equal housing opportunities.

1

## PARTIES

4.      Ms. Katz is an individual female residing in Broward County, Florida.

5.      Defendant Segal is an individual male residing in Broward County, Florida.

6.      Defendant Rothschild is an individual female residing in Broward County, Florida.

7.      Upon information and belief, Defendant Segal and Defendant Rothschild are a married couple.

8.      At all material times, Ms. Katz was a tenant of Defendant Segal's property located at 9225 NW 45th St, Sunrise, Florida 33351 (hereinafter referred to as "the Property").

9.      At all times material, Defendant Segal had ownership over the Property and rented the Property to Ms. Katz.

10.      The Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b) and within the meaning of § 760.22(5), Fla. Stat.

11.      Ms. Katz is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i) and within the meaning of § 760.35(1), Fla. Stat.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  This action is authorized and instituted pursuant to 42 U.S.C. § 3613 and § 760.35, Fla. Stat.

13.      Venue is proper in this Court under 28 U.S.C. §1391 because the events giving rise to this action were committed within the jurisdiction of the United States District Court for the Southern District of Florida.

## FACTUAL ALLEGATIONS

14.      In or around November of 2014, Ms. Katz found the Property owned by Defendant Segal in an online listing and inquired about renting the Property.

15.     Ms. Katz believed she had found her dream rental property, and shortly thereafter entered into a one-year lease agreement with Defendant Segal.

16.     Almost immediately after moving in, Ms. Katz began to experience discriminatory treatment at the hands of the Defendant Segal. By means of example and not meant to be an exhaustive list, throughout Ms. Katz' eight-year tenancy, Defendant Segal made frequent unrequested lewd and inappropriate sexual remarks at Ms. Katz, made sexual advances at Ms. Katz, invited Ms. Katz to come over and have sex, entered Ms. Katz' home without any notice, yelled at and berated Ms. Katz, refused to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, and even threatened Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing.

17.     Ms. Katz initially began experiencing Defendant Segal's discriminatory treatment when, early on in her tenancy, Defendant Segal began berating Ms. Katz for any reason he could find. On multiple occasions, while Ms. Katz was standing on her porch, Defendant Segal would yell at and attack Ms. Katz for "not taking care of the house", despite Ms. Katz following all of her obligations under the lease agreement.

18.     Ms. Katz received similar treatment anytime she reached out to Defendant Segal to request that he make routine repairs to the property. In response to these requests, Defendant Segal would become explosively angry, yelling at Ms. Katz and demanding that she fix the items in need of repair herself.

19.     These experiences made Ms. Katz extremely fearful of even normal, everyday interactions with her landlord.

20.     Defendant Segal and Defendant Rothschild lived next-door in the property adjoining Ms. Katz' Property, making it near impossible to avoid the Defendants.

21.     Defendants only stayed at the adjoining property three to four months per year at the end of the summer, making Ms. Katz dread the annual period when Defendants returned to harass and mistreat Ms. Katz.

22.     At the end of Ms. Katz' initial lease agreement in 2015, she wanted to move out and find a new rental property, but she was living paycheck to paycheck and was unable to come up with the required deposits to secure a new rental property.

23.     Ms. Katz had no choice but to stay at the Property and hope that conditions would improve with Defendant Segal. Ms. Katz and Defendant Segal did not execute a new lease agreement but entered into a verbal agreement regarding the Property from that point forward.

24.     Contrary to what Ms. Katz had hoped, Defendant Segal's treatment of Ms. Katz only became worse from there.

25.     Defendant Segal began entering into Ms. Katz' home unannounced, whenever he pleased. Instead of sending a text message or placing a phone call to discuss a matter, Defendant Segal would simply barge into Ms. Katz' home. If the door was locked for any reason, Defendant Segal would pound on the door, shouting and yelling until Ms. Katz opened the door. Ms. Katz worked from home, which made Defendant Segal's intrusions especially humiliating and difficult to deal with.

26.     To make matters worse, during these intrusions, Defendant Segal sometimes entered Ms. Katz' home half-clothed, with no shirt on. Ms. Katz felt extremely uncomfortable and embarrassed when this occurred.

27.     When Defendant Segal entered Ms. Katz home, he often would stand there, and make degrading and sexist remarks such as "**This house is so dirty. What kind of women are you?**" and "**What kind of women let's her house get like this?**" Defendant Segal also suggested

4

that Ms. Katz talk to his wife, Defendant Rothschild, so that she could teach Ms. Katz "**how to be a real woman**."

28.     Defendant Segal would also make remarks mocking Ms. Katz' boyfriend, asking "**Why doesn't your boyfriend make the repairs around the house? Your boyfriend is a loser**" and "**Why don't you get yourself a real man like me?**".

29.     Defendant Segal's constant shaming and mockery made Ms. Katz upset on a regular basis, often causing her to break down in tears outside the Property. Even Ms. Katz neighbors took notice of the abuse that Ms. Katz endured at the hands of her landlord.

30.     Ms. Katz' neighbors also took notice of the particular disrespect Defendant Segal had for Ms. Katz because she was a woman. Anytime Ms. Katz' boyfriend interacted with Defendant Segal, he was treated with significantly more respect than Ms. Katz ever was.

31.     Defendant Segal's remarks only grew more sexualized and inappropriate over time. Whenever Ms. Katz was forced to speak with Defendant Segal, he would make comments such as "**You are so sexy**" and "**Every year you get more beautiful**". These remarks made Ms. Katz was extremely uncomfortable and each time Ms. Katz refused to engage with Defendant Segal's advances.

32.     Ms. Katz had experienced sexual abuse in the past, making it especially difficult for her to tolerate the sexual harassment from her landlord. Ms. Katz would often feel herself shut down internally and freeze when she experienced sexual harassment similar to the abuse she had endured in the past.

33.     On one occasion, Ms. Katz had to call Defendant Segal regarding desperately needed repairs. Soon after Defendant Segal got on the phone with Ms. Katz' he asked, "**Are you pregnant?**" when Ms. Katz responded stating that she was not pregnant, Defendant Segal said

"**Why aren't you pregnant? Do you need me to come over and show you how to?**". Defendant Segal went even further, asking "**How come you never visit me? If you want, you can come over 2:00 AM because my wife won't be home.**" Ms. Katz was repulsed by Defendant Segal's disgusting remarks and refused his requests.

34.     Defendant Segal also told Ms. Katz about his past sexual partners and infidelity, saying things like "**I used to always have a spare apartment where I would bring my women during my first marriage.**"

35.     Ms. Katz frequently opposed Defendant Segal's discriminatory treatment and on multiple occasions asked Defendant Segal to stop the harassing conduct. In response, Defendant Segal would either completely ignore her protests, or become angry and retaliate against Ms. Katz.

36.     Defendant Segal's retaliation came in various forms. Defendant Segal would refuse to make repairs to property, often requiring Ms. Katz to beg and plead with Defendant Segal to get even the simplest repairs made or items replaced. Defendant Segal also began making cruel remarks to Ms. Katz mocking her appearance, such as "**I wouldn't touch you with a ten-meter pole**".

37.     Defendant Segal's abusive and retaliatory comments targeted every aspect of Ms. Katz' life and tenancy at the Property. Defendant Segal frequently told Ms. Katz "**What is wrong with your dogs? I hate them**" and even stating "**You should kill those dogs**". Defendant Segal's violent comments made Ms. Katz fearful for her safety.

38.     Defendant Segal's sexual harassment became a term of Ms. Katz' tenancy. Anytime Ms. Katz attempted to discuss something via text message in an effort to avoid confrontation with Defendant Segal, he would call Ms. Katz repeatedly until she answered or barge into her home unannounced, and subject her to his sexual advances and abusive comments.

39.     Defendant Segal failed to make numerous repairs to the Property, despite his obligations under the lease agreement and under applicable law to reasonably maintain the premises.

40.     By 2021, Ms. Katz' had lived in the Property for approximately eight-years, and Defendant Segal's failure to maintain the premises had taken its toll.

41.     Ms. Katz and her boyfriend had an inspection done on the Property, which revealed a multitude of problems at the property, including but not limited to, fungi growing in the air conditioning duct, roof structure damage, appliances in disrepair, water damage, an improper electrical water heater connection, exterior wall damage, and the electrical system in disrepair, among others.

42.     On or around July 27, 2021, Ms. Katz and her boyfriend sent the results of the inspections to Defendant Segal. In response, Defendant Segal failed to make any of the repairs at the Property and instead, blamed Ms. Katz stating that she as a woman should take better care of the Property.

43.     In or around October of 2022, Ms. Katz reached her breaking point with Defendant Segal's sexual harassment and decided she could no longer tolerate the discriminatory treatment. Despite the fact that she believed the Defendants would retaliate against her, Ms. Katz knew she needed to formally complain about Defendant Segal's unlawful conduct.

44.     On or around October 4, 2022, Ms. Katz and her boyfriend jointly sent an email to Defendant Segal, outlining specific instances of his discriminatory conduct and respectfully requesting that the sexually harassing behavior stop.

45.     In response, Defendant Segal wrote "**if that's the way you feel you are invited to look for another place**" and ridiculed Ms. Katz by stating, "**the last thing on my mind is Sivan [Ms. Katz]**".

46.     Ms. Katz was appalled by Defendant Segal's retaliatory response. Not only did Defendant Segal make it clear that enduring this harassment was a requirement of renting the Property, but also mocked Ms. Katz' and her well-founded complaints of sexual harassment.

47.     Defendants' campaign of retaliation did not stop there. Later that evening on or around October 4, 2022, Ms. Katz received a voicemail message from Defendant Rothschild stating that Ms. Katz had taken the sexually harassing comments the wrong way, and that Defendant Segal had actually made those comments "**out of sympathy**" for Ms. Katz because Defendant Segal felt bad for her. Defendant Rothschild also stated that when Defendant Segal said he can show Ms. Katz how to get pregnant, it was merely "**a joke**" and that Defendant Segal "**doesn't need you.**"

48.     Defendant Rothschild then left another voicemail that evening, continuing to lash out at Ms. Katz. Defendant Rothschild stated, "**you know how he is**" as if Ms. Katz should be used to the sexual harassment by now. Defendant Rothschild also stated that because Ms. Katz complained, "**We are not willing to continue our relationship you**" and Defendant Segal "**wants you to find a place and leave the house… within two to three weeks.**" Defendant Rothschild added threateningly "**So check yourselves**" because "**after everything that happened, he is no longer willing for you to stay here. Goodbye.**"

49.     Defendant Segal then left Ms. Katz a voicemail, reiterating Defendant Rothschild's threats of eviction. Defendant Segal stated, "**I am very angry and hurt by you**" and demanded

that Ms. Katz "**close out the details with [Defendant Rothschild]**" because "**within two weeks I want you and the dog out.**"

50.     Defendant Segal then left another voicemail, making it a total of four voicemails that Defendants left in just that one evening. Defendant Segal berated Ms. Katz, complaining "**The fact that you go saying dirty things about me to your boyfriend, that I don't think has a brain and a quarter in his head and he writes me such a disgusting email as if I am sexually harassing you.**" Defendant Segal went to on to continue ridiculing Ms. Katz stating, "**If you were the last woman on the planet, I would not touch you with a 10-meter stick**."

51.     At this point, Ms. Katz knew her fears of retaliation had been well-founded. In response to her complaints of sexual harassment, Defendants attacked her, berated her, mocked her appearance, and were now threatening a retaliatory eviction. Ms. Katz was fearful that she may lose her housing and be locked out of her apartment without notice.

52.     On or around October 5, 2022, Ms. Katz, via her legal counsel, sent correspondence to Defendant Segal notifying him of Ms. Katz' intent to pursue discrimination, interference, and retaliation claims arising under the FHA and Florida FHA. The correspondence also expressly stated that threatening Ms. Katz with eviction in response to her complaints of discrimination was prohibited under the FHA and Florida FHA.

53.     In a brazen disregard for Ms. Katz' rights under the FHA and the Florida FHA, on or about November 15, 2022, Defendant Segal, through his legal counsel, sent Ms. Katz correspondence terminating her tenancy and giving her just fifteen (15) days to vacate her home and find a new residence.

54.     Defendant Segal terminated Ms. Katz' tenancy in retaliation for her protected activities and failed to provide any legitimate reason for the sudden termination of Ms. Katz tenancy.

55.     Defendant Segal's termination of Ms. Katz' tenancy constituted an unlawful actual and/or constructive eviction in violation of the FHA and Florida FHA.

56.     The above are just some examples of the unlawful conduct and comments to which Defendants subjected Ms. Katz to on a continuous and ongoing basis throughout her tenancy.

57.     Defendants unlawfully discriminated against Ms. Katz because of her sex and retaliated against her because she opposed and complained about Defendant Segal's unlawful housing practices.

58.     Defendants violated the FHA and the Florida FHA by subjecting Ms. Sivan to quid pro quo harassment, hostile environment harassment, interference, and retaliation.

59.     Defendants exhibited a continuous practice of discrimination, and Ms. Katz makes all claims herein under the continuing violations doctrine.

60.     Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this Complaint and Ms. Katz hereby makes a claim for all continuing discrimination and retaliation.

61.     As a result of Defendants' conduct, Ms. Katz was caused to sustain serious and permanent psychological injuries, in addition to severe emotional distress.

62.     As a result of Defendants' conduct, Ms. Katz felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63.     As a result of the acts and conduct complained herein, Ms. Katz has suffered pecuniary losses including housing expenses, moving costs, transportation expenses, and future

losses, among others. Ms. Katz has also suffered non-pecuniary losses including loss of housing opportunity, emotional pain, humiliation, suffering, inconvenience, and loss of enjoyment of life, among others.

64.     The Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendants.

**CAUSES OF ACTION**
**COUNT I**
**42 U.S.C. § 3604(b)**
**SEX DISCRIMINATION – QUID PRO QUO**
**(Plaintiff Katz as Against Defendant Segal)**

65.      Plaintiff reincorporates the factual allegations in paragraphs 14-64.

66.     The FHA provides, in relevant part, that "it shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

67.     "Quid Pro Quo" sexual harassment under the FHA "refers to an unwelcome request or demand to engage in conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to: The sale, rental or availability of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction. An unwelcome request or demand may constitute quid pro quo harassment even if a person acquiesces in the unwelcome request or demand." 24 C.F.R. § 100.600(a)(1).

68.     Ms. Katz was a woman and therefore a protected class member.

69.     Defendant Segal forced Ms. Katz to endure constant sexual harassment as a condition of the rental of the Property and the terms, conditions, and privileges of the rental. Defendant Segal's sexual harassment included, but was not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

70.     Defendant Segal's requirement that Ms. Katz tolerate the sexual harassment as a condition of the rental of the Property was further evidenced by Defendant Segal responding to Ms. Katz complaint about the sexual harassment by stating "if that's the way you feel you are invited to look for another place."

71.     Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

72.     Defendant Segal's sexual harassment was unwelcomed by Ms. Katz who had no choice but to endure the discriminatory treatment by her landlord. Ms. Katz knew that Defendants would retaliate against her and threaten eviction if Ms. Katz opposed any of Defendant Segal's discriminatory and abusive treatment.

73.     As a direct and proximate result of the Defendant Segal's intentional discriminatory conduct in violation of the FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other

financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental

anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

74.     Defendant Segal's actions were knowing, intentional, willful, malicious, and in

reckless disregard of the Ms. Katz' rights under the FHA, warranting the imposition of punitive

damages in addition to compensatory damages.

75.     The conduct of Defendant Segal deprived Ms. Katz of her statutory rights

guaranteed under the FHA.

76.     Ms. Katz requests that her attorney's fees and costs be awarded as permitted by

law.

**COUNT II**
**42 U.S.C. § 3604(b)**
**SEX DISCRIMINATION – HOSTILE ENVIRONMENT**
**(Plaintiff Katz as Against Defendant Segal)**

77.     Plaintiff reincorporates the factual allegations in paragraphs 14-64.

78.     The FHA provides, in relevant part, that "it shall be unlawful to discriminate against

any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision

of services or facilities in connection therewith, because of race, color, religion, sex, familial status,

or national origin." 42 U.S.C. § 3604(b).

79.     "Hostile Environment" sexual harassment under the FHA "refers to unwelcome

conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or

use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the

provision or enjoyment of services or facilities in connection therewith; or the availability, terms,

or conditions of a residential real estate-related transaction. Hostile environment harassment does

not require a change in the economic benefits, terms, or conditions of the dwelling or housing-

related services or facilities, or of the residential real-estate transaction." 24 C.F.R. § 100.600(a)(2).

80.     The determination of whether a hostile environment harassment exists "depends on the totality of the circumstances" and "can be written, verbal, or other conduct, and does not require physical contact." 24 C.F.R. § 100.600(a)-(b).

81.     Ms. Katz was a woman and therefore a protected class member.

82.     Defendant Segal's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the terms, conditions, and privileges of the rental were altered, and that the housing environment was intimidating, hostile, or abusive.

83.     Defendant Segal's severe and pervasive conduct included, but was not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

84.     Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

85.     Defendant Segal's discriminatory conduct toward Ms. Katz negatively impacted both her professional life and her personal life. Defendant Segal's conduct made Ms. Katz feel isolated, embarrassed, and ashamed.

86.     As a direct and proximate result of the Defendant Segal's intentional discriminatory conduct in violation of the FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

87.     Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the FHA, warranting the imposition of punitive damages in addition to compensatory damages.

88.     The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the FHA.

89.     Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT III**
**42 U.S.C. § 3617**
**INTERFERENCE**
**(Plaintiff Katz as Against Defendant Segal)**

90.     Plaintiff reincorporates the factual allegations in paragraphs 14-64.

91.     The FHA provides, in relevant part, that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

92.     Ms. Katz was a woman and therefore a protected class member.

93.     Defendant Segal interfered with Ms. Katz' right to nondiscriminatory treatment by sexually harassing Ms. Katz and discriminating against Ms. Katz on the basis of her sex in violation of 42 U.S.C. § 3617.

94.     Defendant Segal interfered with Ms. Katz' right to nondiscriminatory treatment by engaging in sexually harassing conduct, including but not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

95.     Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

96.     Defendant Segal's sexual harassment was unwelcomed by Ms. Katz who had no choice but to endure the discriminatory treatment by her landlord. Ms. Katz knew that Defendant Segal would retaliate against her and threaten eviction if Ms. Katz opposed any of Defendant Segal's discriminatory and abusive treatment.

97.     As a direct and proximate result of the Defendant Segal's intentional discriminatory conduct in violation of the FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

98.     Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the FHA, warranting the imposition of punitive damages in addition to compensatory damages.

99.     The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the FHA.

100.    Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 3617**
**RETALIATION**
**(Plaintiff Katz as Against Defendant Segal)**

101.    Plaintiff reincorporates the factual allegations in paragraphs 14-64.

102.    The FHA provides, in relevant part, that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

103.    Ms. Katz was a woman and therefore a protected class member.

104.    Ms. Katz engaged in a protected activity when she opposed Defendant Segal's unlawful sex discrimination and harassment and asserted her statutorily protected rights under the FHA.

105.    In response to Ms. Katz' opposing Defendant Segal's unlawful conduct under the FHA, the Defendant retaliated against Ms. Katz.

106.    Defendant Segal's retaliatory acts included but were not limited to yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured

Defendant Segal's sexual harassment, intimidating Ms. Katz, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

107. Defendant Segal took the above-mentioned materially adverse actions against Ms. Katz because of her protected activities.

108. As a direct and proximate result of the Defendant Segal's intentional retaliatory conduct in violation of the FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses. Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

109. Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the FHA, warranting the imposition of punitive damages in addition to compensatory damages.

110. The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the FHA.

111. Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT V**
**42 U.S.C. § 3617**
**RETALIATION**
**(Plaintiff Katz as Against Defendant Rothschild)**

112. Plaintiff reincorporates the factual allegations in paragraphs 14-64.

113. The FHA provides, in relevant part, that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the

exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

114.    Ms. Katz was a woman and therefore a protected class member.

115.    Ms. Katz engaged in a protected activity when she opposed Defendant Segal's unlawful sex discrimination and harassment and asserted her statutorily protected rights under the FHA.

116.    In response to Ms. Katz' opposing Defendant Segal's unlawful conduct under the FHA, Defendant Rothschild retaliated against Ms. Katz.

117.    Defendant Rothschild's retaliatory acts included but were not limited to, yelling at and berating Ms. Katz, intimidating Ms. Katz, and threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing.

118.    Defendant Rothschild took the above-mentioned materially adverse actions against Ms. Katz because of her protected activities.

119.    As a direct and proximate result of the Defendant Rothschild's intentional retaliatory conduct in violation of the FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

120.    Defendant Rothschild's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the FHA, warranting the imposition of punitive damages in addition to compensatory damages.

121.    The conduct of Defendant Rothschild deprived Ms. Katz of her statutory rights guaranteed under the FHA.

122.    Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VI
### § 760.23(2), FLA. STAT.
### SEX DISCRIMINATION – QUID PRO QUO
### (Plaintiff Katz as Against Defendant Segal)

123.    Plaintiff reincorporates the factual allegations in paragraphs 14-64.

124.    The Florida FHA provides, in relevant part, that "it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, disability, familial status, or religion." § 760.23(2), Fla. Stat.

125.    "The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

126.    Ms. Katz was a woman and therefore a protected class member.

127.    Defendant Segal forced Ms. Katz to endure constant sexual harassment as a condition of the rental of the Property and the terms, conditions, and privileges of the rental. Defendant Segal's sexual harassment included, but was not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

128.     Defendant Segal's requirement that Ms. Katz tolerate the sexual harassment as a condition of the rental of the Property was further evidenced by Defendant Segal responding to Ms. Katz complaint about the sexual harassment by stating "if that's the way you feel you are invited to look for another place."

129.     Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

130.     Defendant Segal's sexual harassment was unwelcomed by Ms. Katz who had no choice but to endure the discriminatory treatment by her landlord. Ms. Katz knew that Defendants would retaliate against her and threaten eviction if Ms. Katz opposed any of Defendant Segal's discriminatory and abusive treatment.

131.     As a direct and proximate result of the Defendant Segal's intentional discriminatory conduct in violation of the Florida FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

132.     Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the Florida FHA, warranting the imposition of punitive damages in addition to compensatory damages.

133.     The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the Florida FHA.

134.     Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT VII
### § 760.23(2), FLA. STAT.
### SEX DISCRIMINATION – HOSTILE ENVIRONMENT
### (Plaintiff Katz as Against Defendant Segal)

135.    Plaintiff reincorporates the factual allegations in paragraphs 14-64.

136.    The Florida FHA provides, in relevant part, that "it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, national origin, sex, disability, familial status, or religion." § 760.23(2), Fla. Stat.

137.    "The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

138.    Ms. Katz was a woman and therefore a protected class member.

139.    Defendant Segal's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the terms, conditions, and privileges of the rental were altered, and that the housing environment was intimidating, hostile, or abusive.

140.    Defendant Segal's severe and pervasive conduct included, but was not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

141.    Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

142.    Defendant Segal's discriminatory conduct toward Ms. Katz negatively impacted both her professional life and her personal life. Defendant Segal's conduct made Ms. Katz feel isolated, embarrassed, and ashamed.

143.    As a direct and proximate result of the Defendant Segal's intentional retaliatory conduct in violation of the Florida FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

144.    Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the Florida FHA, warranting the imposition of punitive damages in addition to compensatory damages.

145.    The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the Florida FHA.

146.    Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VIII
### § 760.37, FLA. STAT.
### INTERFERENCE
### (Plaintiff Katz as Against Defendant Segal)

147.    Plaintiff reincorporates the factual allegations in paragraphs 14-64.

148.    The Florida FHA provides, in relevant part, that "It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his

having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37." § 760.37, Fla. Stat.

149.    "The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

150.    Ms. Katz was a woman and therefore a protected class member.

151.    Defendant Segal interfered with Ms. Katz' right to nondiscriminatory treatment by sexually harassing Ms. Katz and discriminating against Ms. Katz on the basis of her sex in violation of 42 U.S.C. § 3617.

152.    Defendant Segal interfered with Ms. Katz' right to nondiscriminatory treatment by engaging in sexually harassing conduct, including but not limited to, making lewd and inappropriate sexual remarks at Ms. Katz, making sexual advances at Ms. Katz, inviting Ms. Katz to come over and have sex, entering Ms. Katz' home without any notice, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

153.    Defendant Segal's sexual harassment was targeted towards Ms. Katz because she was a female.

154.    Defendant Segal's sexual harassment was unwelcomed by Ms. Katz who had no choice but to endure the discriminatory treatment by her landlord. Ms. Katz knew that Defendants would retaliate against her and threaten eviction if Ms. Katz opposed any of Defendant Segal's discriminatory and abusive treatment.

155.     As a direct and proximate result of the Defendant Segal's intentional discriminatory conduct in violation of the Florida FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

156.     Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the Florida FHA, warranting the imposition of punitive damages in addition to compensatory damages.

157.     The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the Florida FHA.

158.     Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.37, Fla. Stat.**
**RETALIATION**
**(Plaintiff Katz as Against Defendant Segal)**

159.     Plaintiff reincorporates the factual allegations in paragraphs 14-64.

160.     The Florida FHA provides, in relevant part, that "It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37." § 760.37, Fla. Stat.

161.     "The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

162.     Ms. Katz was a woman and therefore a protected class member.

163.    Ms. Katz engaged in a protected activity when she opposed Defendant Segal's unlawful sex discrimination and harassment and asserted her statutorily protected rights under the Florida FHA.

164.    In response to Ms. Katz' opposing Defendant Segal's unlawful conduct under the Florida FHA, Defendant Segal retaliated against Ms. Katz.

165.    Defendant Segal's retaliatory acts included but were not limited to, yelling at and berating Ms. Katz, refusing to make routine repairs at the Property unless Ms. Katz endured Defendant Segal's sexual harassment, intimidating Ms. Katz, threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing, and engaging in an actual/constructive eviction when he terminated Ms. Katz' tenancy.

166.    Defendant Segal took the above-mentioned materially adverse actions against Ms. Katz because of her protected activities.

167.    As a direct and proximate result of the Defendant Segal's intentional retaliatory conduct in violation of the Florida FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

168.    Defendant Segal's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the Florida FHA, warranting the imposition of punitive damages in addition to compensatory damages.

169.    The conduct of Defendant Segal deprived Ms. Katz of her statutory rights guaranteed under the Florida FHA.

170.     Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**§ 760.37, Fla. Stat.**
**RETALIATION**
**(Plaintiff Katz as Against Defendant Rothschild)**

171.     Plaintiff reincorporates the factual allegations in paragraphs 14-64.

172.     The Florida FHA provides, in relevant part, that "It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37." § 760.37, Fla. Stat.

173.     "The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

174.     Ms. Katz was a woman and therefore a protected class member.

175.     Ms. Katz engaged in a protected activity when she opposed Defendant Segal's unlawful sex discrimination and harassment and asserted her statutorily protected rights under the Florida FHA.

176.     In response to Ms. Katz' opposing Defendant Segal's unlawful conduct under the Florida FHA, Defendant Rothschild retaliated against Ms. Katz.

177.     Defendant Rothschild's retaliatory acts included but were not limited to, yelling at and berating Ms. Katz, intimidating Ms. Katz, and threatening Ms. Katz with eviction when she complained about the discriminatory treatment she was experiencing.

178.     Defendant Rothschild took the above-mentioned materially adverse actions against Ms. Katz because of her protected activities.

179.    As a direct and proximate result of the Defendant Rothschild's intentional retaliatory conduct in violation of the Florida FHA, Ms. Katz has suffered and will continue to suffer economic damages in the form of housing expenses, moving costs, transportation expenses, and other financial losses.  Ms. Katz has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, loss of housing opportunity, and other intangible damages.

180.    Defendant Rothschild's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Katz' rights under the Florida FHA, warranting the imposition of punitive damages in addition to compensatory damages.

181.    The conduct of Defendant Rothschild deprived Ms. Katz of her statutory rights guaranteed under the Florida FHA.

182.    Ms. Katz requests that her attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendants for all damages suffered by the Plaintiff, including compensatory damages, emotional distress damages, punitive damages, liquidated damages, statutory damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendants' conduct in violation of the FHA and the Florida FHA.

Dated:  Miami, Florida,       **DEREK SMITH LAW GROUP, PLLC**
       November 17, 2022,       *Counsel for Plaintiff*


/s/ Kyle T. MacDonald
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Kyle@dereksmithlaw.com